Inc. Arguments not to exceed 20 minutes per side. Mr. Henderson for the appellant. Good morning, Your Honor. Five minutes for rebuttal. Please proceed. Tom Henderson for NPC. NPC did not waive its wrongful arbitration in this case. This court has held that due to the strong presumption in favor arbitration, labor can be found only with the most compelling fact patterns. We do not have that here. Moreover, to the extent there is any doubt as to labor, that doubt is to be resolved in favor arbitration. Now here there are three critical factors that distinguish this case from the other cases where labor has been found. First, the motion to compel arbitration was timely filed. It was timely filed under the parties' joint agreed scheduling order. In fact, it was filed some three months prior to the deadline for the filing of the dispositive motions. The deadline for dispositive motions under the parties' agreed order was July 16, 2014. This motion was filed in April of 2014. So there's no undue delay. Was there any reason it could not have been filed earlier? The reason it was not filed earlier is because the Supreme Court, when these cases were filed, the Supreme Court had held argument on Oxford Health Care versus Sutter. The issue there was whether the arbitrator properly ruled the arbitration to proceed as a class arbitration when the arbitration agreement was sidelined. I listened to that little argument, and if it was not going well for the person who was saying that you should reverse the arbitration decision, that decision came out in June. And they held basically that just because it's silent doesn't mean that the arbitrator has to say it's silent on it. So the issue then, which is still remaining from all other Supreme Court cases, who decides whether there's class-wide arbitration? The Sixth Circuit ruled in November of 2013 that it was for the court to decide. And frankly, the reason we wanted that first is because I think it's a tremendous conflict of interest for an arbitrator to have to make the decision of whether this is a class arbitration or not. If that explains why you didn't file it earlier, why didn't you say that below? I think we did. And why did you wait? If that really is the reason, why did you wait for five months after the Sixth Circuit ruled in that? We had some discussion with the Plaintiffs' Council, and those didn't go anywhere. And it's that time that we decided – because there was no confortions to it. The plaintiffs weren't doing anything either. We don't see that in the record. We don't. Did you claim, did you explain to the district judge that you were planning to do this, but you waited for this decision, and then you were in settlement? I don't think so, Your Honor. I don't think so. So none of this is in the record? The reason we did is not in the record in the district court. However, what is in the district court? I was going to say, when you used that filing deadline that the judge set for these popular motions, do you think that a motion to compel arbitration is one of those typical summary judgment-type motions? We think it's a dispositive motion, yes, Your Honor. Yes, Your Honor, because it lacks something of that jurisdiction in the court. I didn't understand you to have made that argument in the pleadings that you filed. You seem to be saying this morning that because you had a motion filing deadline, that it was okay to wait until then. All of the cases talk about what has happened or transpired in the case. None of them, that I recall anyway, make any reference whatsoever to what the dispositive motion filing deadline is. They simply say you shouldn't be doing certain things before you file that motion or you're at risk of waiting. Let's look at what happened up to the day following the deadline. In three of the cases, basically nothing happened. Remember, this was filed as an NSA collective action. For 16 months, it wasn't even until after we filed this motion that the plaintiffs filed their motion for conditional certification. The initial motion. The only motion the plaintiff filed in any of these five cases was a motion to consolidate, independent, which was denied. The only motions that were filed in any of the cases in that were, we filed the emergency motion concerning the plaintiff's attorney ordering a pizza from our driver, and when the driver delivered it, the plaintiff's attorney personally solicited me. We filed a motion to stop that. The plaintiffs never responded to that motion, so there couldn't be any prejudice there. The only other motion that was filed was the result of an offer of judgment being accepted in two cases. And there was a plot. That was all that happened. The plaintiffs were not prosecuting this case. The plaintiffs also, and I don't mean to say that the only reason we're, and I think all of this, I'm not saying the only reason this is not untimely is because of the motion, but that's certainly something that the court should consider. Now, I'm sorry, I lost my train of thought there. Let me redirect your train of thought for a second. One of the factors that we look at for obvious reasons is whether you've lost a dispositive motion, and then you see arbitration. That also appears to be what happened here, so what do we make of that circumstance? That was really on a collaboration. That was on the offer of judgment from one individual plaintiff in each case. So that is not to me the same as a summary judgment on the address of the merits of the claims, which is what the other cases have. The whole idea, I think, is you can't wait to get the sense of how the judge is viewing this particular case and then say, I want out of that form. So why would that not apply even to the type of motion that you described? Again, I think you've got to look at each individual case because it must be decided on a case-by-case basis. Again, that offer of judgment was not to the merits of the claims. We didn't address the merits claim. They weren't entitled over time or they weren't entitled in what. That was just a procedural Rule 68 motion. Now, and the second thing you've got to look at is prejudice of the plaintiff. And again, the plaintiffs were not prosecuting this case. They agreed to eight months of discovery and conducted zero discovery. Not an interrogatory, not a deposition, nothing. Secondly, they refused to answer our discovery saying, wait a minute, you can't have discovery. Even though the court had given eight months and they agreed to eight months full discovery. The case was still at its infancy. But one of the things I want to talk about with the offer of judgment cases too, we kind of pled arbitration as the affirmative defense in those two cases in our answer. And in the other cases, we kind of pled like a subject matter jurisdiction. So when you look at each case, again, you're going to see two cases that have the arbitration affirmative defense timely raised in the initial answer. But when you raised it, couldn't you just have filed a motion to arbitrate at that point? We did. It was a few days later. It was a few days later in the two cases. I think we filed a motion for arbitration four or five days after we filed the answer in those two cases. You're saying you wanted to cover your bets. You wanted to see what the standards of arbitration that are going to be more favorable to you than litigation. And you wanted to basically go both sides as long as you could. I mean, isn't that the kind of gaugemanship that we're trying to prohibit? I don't think so. Because it wasn't that we were trying to see which was better. The law was just unsettled. We didn't know. Well, I don't think that's why you're doing the gaugemanship. You're trying to get the best law you can as long as you can spring this thing out. I don't think it's gaugemanship. If the plaintiff had done something, had served in an arbitration, what's this like a subject matter jurisdiction? If the plaintiff had taken the 36th deposition and done something, then we would have been forced to do it earlier. But they weren't doing anything. This case is still in the beginning stages. Well, let's look at a couple of the cases that you've both cited, Hurley, Johnson, and Shai. This one seems to be almost on all fours with Johnson. Let me tell you why so you can respond to that. There they waited eight months. You waited longer. There they filed an answer without raising arbitration as affirmative defense. I think that's true here. In two of the cases, it's not true. In three of the cases, it is true. They engaged in settlement negotiations. You did that. Yes. And they participated in a scheduling conference. You did that. We did that. And they served. Did you serve any discovery requests? We served. Yes, we served interrogatories and a document request, et cetera. So your thrust seems to be, well, the plaintiffs weren't doing anything. And I don't know if that's true or not, but let's assume they weren't. But the cases seem to reflect whether you did something that's inconsistent with reliance upon the arbitration clause, not what the other side was doing, although that may become relevant in the subsequent discussion about prejudice. Right. What I would say is we did nothing that was completely inconsistent with arbitration. The discovery we served is available under AAA rules for arbitration, so it can be used there. The scheduling conference, AAA, has its own scheduling conferences. So there's nothing inconsistent. Again, the issue is that this case is languishing not because the defendant was or was not filing a motion, but because the plaintiff wasn't doing anything. And, again, so there's no prejudice against the plaintiff, which is its second part. But wouldn't that argument fly in almost every one of these cases? If you simply say, yes, a bunch of things happened in court that we did or we initiated or we participated in, but, gee, we would have done it again anyway in arbitration, that would mean there would never be a waiver. That's true. I think what we do, what was done in these cases, is not nearly as much as in that case. And I'll tell you an awesome thing. I think that's the case where there was a false judgment in it, if I'm not mistaken. They came back a year later and said, I don't think that's the case. I don't think so, but I'm not sure. Anyway, the cases there show much more substantive activity than we have here. Again, we filed a motion to stop the slow session in all the cases. We filed a motion to dismiss in two cases. We responded to the one motion the plaintiff filed in any case, which was a motion to consolidate. We had a schedule. That's an agreed schedule. That's all that happened. That's not engaging in extensive discovery and disposing of motions and motions to change venues, things like that. So I think the degree of participation here is not near what it was in those cases. The district jury can speak for himself, but he's a district judge, so he has to worry about this. I mean, district judges, when I was a district judge, you're kind of cranky when they're working on a case for a year and then all of a sudden you say, gee, I'm going on to have perpetration. It just seems like everything you did here is inconsistent with the appropriate use of judicial time. Well, I think so because, again, there was not that much going on. But still it was languishing, and there was – Our time is important, even if it's not. No question, Raj. No question. At least we think it is. The activity that you engaged in showed an intent to litigate. That's one of the factors to look at. Well, I respectfully disagree with that because, again, it was all preliminary stuff. It was not moving to the merits of the plan. But moving on, I'd like to address two. Even if the court finds there was some waiver on some global basis, we cannot have waived the right to compel arbitration as to people due to end-due delay and prejudice, of people who aren't even parties yet, of opt-ins in the future, or opt-ins who opt-in tomorrow. And that's a scintillating error that this report made because this is not a rule-of-three-class action. This is not an action that's commenced for all plaintiffs at the same time for the initiation of a lawsuit. Under the FLSA, each time an opt-in comes in the case, that's the commencement date of his or her case. 256B of 29 U.S.C. says each opt-in action is commenced, quote, on the subsequent date on which such written consent is filed with the court. Before you get too far into the merits, let's look at what the basis was of the district judge ruling against you on that point. As I understand it, so pardon me if I'm wrong, you first raised this issue about how the statute, the arbitration clause has to be applied on a person-by-person basis during the, in a Rule 59E motion. Well, our original motion was on an individual basis. We compelled individuals on an individual basis to file their charges. The district court said that this was denied because you didn't raise it on a timely basis. When you did raise it, it was not the proper time and vehicle to raise it. So is that factually correct, and is it legally correct? He did say that. I don't think it's correct. Not correct factually or not correct legally? I don't think it's correct legally. If it's factually, that's what he said. But we did raise it. Is it factually that's what happened? I don't think so. No, but you didn't raise it initially. What we did in our motion for reconsideration was we tried to come up with some framework to analyze this. We moved on individual basis. Now, the issue here is that nobody can find any law on this precise issue. I think our response, our reply to the court's response on this issue fairly answers their conclusory, you waived it. But you can't waive things even if they're right. I mean, the judge himself said this law is anything but clear. There's no cases out there on it. I can't come up with every issue on a law that doesn't exist. I mean, we're doing our best in our community to notify the court of our arguments, both in motion and in motion of battle. It's so important to address it. But still, I don't think there's any way that if somebody opts in on this case a year from now, they're not bound by this judgment. They're not appointed. We can't have waived that as to people in the future. Let's see what time is it. All right. Thank you. You'll have your microphone. Your Honor, I'm Gordon Jackson of the law firm of Jackson, Shills, Tazer, and Houghton Memphis, Tennessee, and we represent the Alpha Leagues. Just some clarification in terms of some of the things said by Mr. Henderson. We did prosecute the case. There was an initial emergency motion that we addressed as far as the activity of the case. There were oppositions to a motion to consolidate. There's a Rule 26 health report. There's Rule 26 initial disclosures. There were status conferences, two telephone conferences with the court related to the emergency motion. There were motions to dismiss the gun in the Redmond case. And the counsel is so disingenuous when he explains to the court that they filed answers with the affirmative defense in two of these cases. That was at the point that 15 months had already passed. So to me, that was highly disingenuous to represent to the court that they filed affirmative defenses in the answers when the answers were not filed until 15 months later, three days before they filed the motion to compel. The status conference, the scheduling conference, was in August. And the dates were set out to file a motion for conditional certification. And four months later, within four months there, December, we advised counsel on the other side that we had prepared and sent them copies of motions for conditional certification. But under the local rules, under the Western District of Tennessee, we have required to consult. And quite frankly, that duty to consult gave them the opportunity to get into this settlement discussion, which went on for four months. At the end, without them offering one proposal, one offer, or one counteroffer. So the lack of prosecution in this case is not on us. The court can conclude why the settlement discussions were protracted for four months, but I don't think it takes any genius to figure that out. So let me go back to my original argument. I did want to clarify, I think, that we did diligently prosecute it, and it was going to file a motion for conditional certification within four or five months of the status of the scheduling order. I'd like to clarify a couple of points here, given my time. And that is this, that only a few, or I should say some, of those who had opted in, just some of those of the main plaintiffs, had opted in these five cases. Were there any arbitration agreements even to argue about? 95 of the five cases, 95 main plaintiffs and opt-in plaintiffs remained in the case without any obligation to arbitrate because there were no arbitration agreements relating to them. Those cases, those five cases, the integrity of those five cases remained. So that's 95 out of a total of how many? 95 out of probably – I don't know all of them. I would say probably out of 150, out of maybe 175. But there were probably more who allegedly had arbitration agreements than those remaining, but the point is the integrity of that collective action, those five collective actions remained. And even if you were to rule in D.C.'s favor here, those cases should go on. But the rub here is the fact that the district court, in deference to this court, has refused to do anything on this case, even in our motion for conditional certification on the remaining plaintiffs who are not affected by the arbitration agreements. And therefore, as far as prejudice, of course there were rights of being prejudiced every day. But more importantly, as far as prejudice, the rights of the huge class members who otherwise would have the opportunity to have opted in for sentencing notices or recruitment notices had we filed the motion for conditional certification back in January. I think there was more or less substantial evidence to meet the lenient tests under Comer and then O'Brien to do that. And so they would have already had the opportunity to opt in. And so the prejudice here is partly on just the million dollars of legal time that we'd be spending on it and the $25,000 in expenses that we get – the plaintiffs that spend on this. It is to the punitive class. And Judge Griffin, you raised the issue of gamesmanship. If this court were to rule in favor of this, basically it would be telegraphing to at least the employees in the Sixth Circuit persuasively throughout the country. Because this is all you have to do. All you have to do, if you just have one arbitration agreement pertaining to one opt-in, is to sit back for 15 months and then play your arbitration cards. And even if it's ruled against you, you don't care. I'm not attaching this. I'm just talking about hypothetical here. And then you know that under FAA, you've got a right to appeal somewhat interlocutory, I might add. And then irrespective of what the court does at the bailout, by the time it gets back to the district, the time's already run on all the punitive class members who did not opt in. So that goes right in the face of Section 216B, the collective actions under the Fair Labor Standards Act, which is a collective process. Now, the other issue here is that the validity and the enforceability of all these alleged arbitration agreements have never been signed by the court. The court tells us strongly about the waiver issue. At the plaintiffs, eight arguments as to why it's invalid. One of which is on Pizza Hut Incorporated, the franchisee has no ownership of the franchisee, buying both the franchisee and the employees. But that was just one of the many arguments that we had. So I guess I'm getting carried away here before I get to the main argument. But again, oh, by the way, I'm not the same Jackson that was in the preceding argument. And I just wanted to clarify that, because electronic communication now can really screw things up. So I'm just making a note of that. But let me just continue here with regard to the impact and the effect of your ruling individually. First of all, in my opinion, it's improper for you to do that, because as Judge McKeague said, the district court said, that NBC had waived its right even to bring up this individual to individual plaintiff by plaintiff simply because they had not brought that up in their argument in the motion to compel, only in the argument for reconsideration. Therefore, it's not before the court, because the record including that argument is not before the court. So that's up to you, honorable jurist. But again, I don't think that's before the court to even consider. But aside from that, in talking about the individual individual, the district court said that was subvert. The entire spirit and intent, and even the language of the collective argument process, I mean, of the collective action process under Section 216, that you would subvert. Can you imagine this case going back, and the district court has to look at every one of these, maybe even discover and hear it on each and every one of these to analyze each case on a waiver basis? That's what they're asking here. And of course, not only did they waive it in terms that they didn't bring it up in their argument in the motion to compel, they waived it by their own actions. When they filed a motion to compel, they didn't file 65 or 85 individual motions to compel. They filed one as to the collective numbers at that time. So they've always treated this as a collective process. We've always treated it as a collective process. And of course, always treated it as a collective process. That's all the court ruled, is this is a collective process. This is not an individual individual. And that's the way, of course, the NPC would like for this to be treated, as though each person individually filed a complaint in this case rather than a collective action. I don't have much time, but I would just like to share with you that the court could not have a more reasoned decision in its order denying a motion to compel. The Hurley case, the OJ case, and this is all that I'm going to read, state established the controlling authority on the waiver. And that is that irrespective of the strong policy, you know, according to arbitration agreements, but if they're compelling factors otherwise, as Mr. Henderson alluded to, that can trump a strong policy, if you will. So the Hurley and the OJ distributors in these leading cases say that if the party proponent of the arbitration agreement engages in certain conduct, it's obviously grounds for waiver. And it looks at a two-pronged situation. One, if the party engaged in conduct that is completely inconsistent with its rights to invoke arbitration. And there are four factors that go to that. And the NPC was guilty on all four counts. The first is the length of the time, 15 months. And the court said, the court said, we can find both cases. No cases in Caesar where the proponents have held up more than a year that waiver was not found. The second, the second factor to look at is the amount of litigation. The amount of litigation. And here there were almost 400 court docket entries, almost 400 court docket entries in these five cases before they filed that motion to compel. So you talk about activity. The third prong of that relative to the inconsistence of behavior is the failure to answer affirmatively as a defense in their answers. And they did not do that in three of these cases. They only did it in two of the cases. And that was after the judge had already ruled adversely of the noun. And 15 months had already gone by. And the last one is, as Judge McGee mentioned earlier, in terms that they waited. They waited 15 months until they had an adverse ruling on the Gunn and the Redlund case. And three days later, filed a motion to compel. So we believe that the judge had a very reasonable decision that NBC was guilty on all four counts. The second prong is how did it prejudice us? How did it prejudice the plaintiffs? How did it abuse the court? And most importantly, how is prejudice thousands and thousands of potential opt-ins who will never have that opportunity because the time when this gets back to the district court, their claims will be extinguished. I don't think that's necessarily something that we'll take into account. But it's an interesting question. Why wouldn't it be told while it's up here? We asked for and I foretold we were denied basically in respect for this court. And that doesn't mean that we won't be denied if we raise it again. And we've given the opportunity to raise it again. So I don't want to mislead the court. I don't think it's a question of equitable tolling. The district court doesn't have any jurisdiction when the court is up here, the case is up here. So how can they be opting into a case that's not even alive down there? I don't understand why after the notice of appeals filed why that jury wouldn't hold. It may not. But let me just share this with you, Your Honor, in terms of going back. Well, you've gone from absolutely they're going to be screwed to maybe not. Well, I would certainly agree with that. But given that, if it goes back, and if you were to uphold the appeal, it goes back, you would still go back on the enforceability, on the court determining validity and enforceability. And if we were ruled in our favor on that point, they would still have another right to come here. So even if there's a tolling, the fact of it is these are minimum wage individuals and they go to different – so there's a loss in the shuffle even if it comes back here again and then goes back. We're talking about three or four years. Now we're going to talk about two or three years. So that's the practicality of it, even though it may be tolled. Hopefully it will be tolled, or it's tolled by the very nature, as you indicate. And I certainly don't disagree with that. But I just go back to my hypothetical. Not accusing anybody of gamesmanship here, but the court felt it was gamesmanship and they used the word dilatory tactics in the decision. Thank you very much. Other questions or – Thank you. Thank you. You get points for enthusiasm. So the statute on opting in isn't running while you're here, is it? It is running. It is running? Okay. It was running from the time you filed this case in January. How can they opt into a case that's really not – Oh, you mean Guadalupe? Yeah, right. The Sixth Circuit in trial versus Baptist-Medical-Ville that – no case is addressed that precisely as you're unaware of. But the prize money, White says, you become part of when you opt in. So you want to reserve the right to argue that while it's up here on your appeal that the statute is running and when it goes back, they can't opt in? If they become time-barred in the meantime, correct. So what do they do in the meantime? What you do is – I want to address that in two things. What happens is two things. When you file a collective action complaint, if the plaintiff doesn't do it the day he files his complaint, the next day he files the motion to conditionally certify. The same day he files a motion to conditionally certify, he files a motion to toll the statute of limitations for anybody who ran and opted in. Now, what happened here, what the problem is here is these cases were filed in January 2013. The plaintiff did not file their motions to toll until April of 2015, over two years later. So, again, any issue with the statute of limits here causes the plaintiff to file a motion until two years and two months after they file the lawsuit. And what's the statute? The statute is two to three years. Two years for a two-year statute unless it's found to be willful in this three-year statute. All right. Interesting issue. Now, the other thing, Mr. Jackson said there'd be all these horrible things with all these individual hearings. Again, the way these things typically work, the plaintiff files their motion for conditional certification right off the bat, usually it's granted. Usually there's a six-month period for people to opt in, to get notice and opt in. And so that's why you have a continuing thing as soon as the case is being prosecuted by the plaintiffs because it will all be done in a five- to six-month period. And there won't be any need. And that's really what we're trying to accomplish with the groups of people is come up with some way to analyze that when there's been no certification, conditional certification. So, again, there won't be all these long, drawn-out proceedings if the case is prosecuted by the plaintiffs. 29 U.S.C. 216b says, No employee shall be a party plaintiff unless he gives his consent in writing, and such consent is filed in court. And then 29 U.S.C. 256b says, Each opt-in action is commenced, quote, on the subsequent date on which such written consent is filed in court. We cannot have engaged in any undue delay or any prejudice to somebody who hadn't even opted in yet. So are you saying that nothing that has happened prior to somebody opting in is binding on the person opting in, whether it's in their favor or against their interest? You start over in every single case. I don't think you start over, but you're not bound. You don't have the rights or the benefits or the privileges or the disadvantages of it. Well, if you don't start over, then what does that mean? If you are bound by some of the jurisdiction... The statute says your opt-in action, Mr. Plante, is commenced. Your action is commenced on the day you opt in. I got that. But let's assume that things have happened in the case involving some of the people who would have opted in. Are those things that happened, whatever they might be, binding on the person that subsequently opts in? I think it would depend on what you're talking about. Here's what I would say. Exactly. So if some of the things are binding on them, then the question is what relates back and what doesn't relate back. I've not seen cases on that, but again, I don't think that you can anymore say, we waived something as somebody who had opted in here. Then they can say that if we won this motion, they can still come in and say, wait a minute, I didn't agree to arbitration. I don't have arbitration. Or they can say, my agreement shouldn't be enforced because of these particular circumstances. There's nothing that can stop people from doing that, and that's what should happen. Because they can't be bound before their party to in order to arbitrate or to not arbitrate. Anything else? No, no, that's it. Oh, I do want to go to one more thing. There wasn't a game-changing shift going on here. It was a serious issue as to whether an arbitrary, serious conflict of interest argument in our view for an arbitrator to decide whether there's class arbitration or not. This is not even kind of just toying around with the system or anything else. It was a legitimate right to see the law develop. I don't think that's a game-changing shift. All right, I think we understand. Thank you. The case will be submitted.